**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CLIFFORD JENKINS,                       :
                                        :     Civil Action No. 09-4019 (FSH)
                Petitioner,             :
                                        :
        v.                              :     **OPINION**
                                        :
MICHELLE RICCI, et al.,                 :
                                        :
                Respondents.            :


**APPEARANCES:**

Petitioner <u>pro se</u>              Counsel for Respondents
Clifford Jenkins                     Theodore J. Romankow
New Jersey State Prison              Union Co. Pros. Office
P.O. Box 861                         32 Rahway Avenue
Trenton, NJ 08625                    Elizabeth, NJ 07202

**HOCHBERG**, District Judge

    Petitioner Clifford Jenkins, a prisoner currently confined
at New Jersey State Prison in Trenton, New Jersey, has submitted
a petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254.  The respondents are Administrator Michelle Ricci and the
Attorney General for the State of New Jersey.

    For the reasons stated herein, the Petition will be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> The convictions emanate from three incidents over
> a period [of] eight hours on January 3, 1998, in
> Plainfield and Fanwood, Union County.  The first
> incident occurred at approximately 1:30 a.m. in
> Plainfield.  At that time, [Howard] Henry parked his
> car in the parking lot of his apartment complex.  Henry
> exited his car and encountered defendant walking
> towards him.  The two men exchanged a greeting and
> Henry proceeded towards his apartment.  When he was
> approximately thirty feet from his parked car,
> defendant punched Henry from behind.  Although dazed,
> Henry was able to ring the doorbell of his apartment.
> His girlfriend opened the door and assisted him.  Soon
> thereafter, Henry realized his keys, money and car were
> missing.  Henry sustained a broken jaw and two broken
> teeth.
>
> Henry described his assailant to the police as a
> 5'11" black male with a medium complexion, a beard and
> mustache, and aged thirty to thirty-five.  He also
> identified defendant's picture from a photo display.
>
> The second incident occurred at 8:15 a.m. on
> January 3.  At that time, [Bernie Mae] Parker was
> walking on Terrill Road towards the Fanwood train
> Station.  She was carrying a backpack and a pocketbook
> with a shoulder strap.  A man, later identified as
> defendant, approached her and they exchanged a
> greeting.  As she walked down the street, she turned
> her head.  At that time, defendant grabbed her

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

pocketbook.  A struggle ensued but Parker released the
bag when she realized defendant was enraged.

Defendant ran down the street with the bag then
turned and ran back towards Parker.  She ran into the
street and was assisted by a passing motorist.
Defendant then proceeded to King Street where he
entered a dark old model car and drove away.  The
motorist who assisted Parker was able to ascertain that
the license number on the car driven by defendant
contained the letters R and K.

Parker described her assailant as a six-foot tall,
slim built black male with a dark complexion wearing a
black shirt with orange piping, black baggy pants and a
black jacket.  She identified defendant from a photo
array and at trial.

An hour later, John Mills was outside his house in
Fanwood not far from Terrill Road.  He was cleaning his
car with the keys to the car in his pocket.  A black
male, later identified as defendant, approached him and
asked where someone lived.  Defendant pointed to houses
behind Mills.  Mills has no recollection of any events
after he turned to look in the direction that defendant
was pointing until he woke up in an ambulance on his
way to the local hospital.  His jaw was broken.

Defendant's encounter with Mills was observed by
Officer Chin of the Fanwood Police.  He was traveling
west on Paterson Road when he observed a black male
approach Mills in his driveway.  The officer made a U-
turn and found Mills lying on the ground at the end of
his driveway.  Seconds later, the officer observed a
black male walking briskly and enter a black Pontiac.
The officer drove his car behind the Pontiac and
alighted from his unmarked car.  The officer, who was
in uniform, identified himself as a police officer and
defendant fled.  A foot pursuit commenced but the
officer broke off the chase due to the distance between
them.  The officer returned to the Pontiac where he
found a woman, dressed in black baggy pants and coat,
hunched in the passenger side of the vehicle.  Other
officers who responded to the scene apprehended
defendant.  He was wearing tan pants, a black knit hat
with a New York Yankees logo and an orange, black and
white Philadelphia Flyers hockey jersey.  He was
thirty-five years old, 5'10" tall and 200 pounds.

> The Pontiac was towed to Plainfield Police
> headquarters.  A set of keys was in the ignition and
> another set of keys was discovered on the floor of the
> front passenger side.  The Pontiac belonged to Henry
> and the keys found on the floor belonged to Mills.

(Opinion of Superior Court of New Jersey, Appellate Division, at 2-5 (Sept. 23, 2002).)

B.   Procedural History

Following a jury trial, in the Superior Court of New Jersey, Law Division, Union County, Petitioner was convicted of first degree robbery of Howard Henry contrary to N.J.S.A. 2C:15-1 (count one), first degree carjacking contrary to N.J.S.A. 2C:15-2a(1) (count two), second degree aggravated assault of Henry contrary to N.J.S.A. 2C:12-1b(1) (count three), second degree robbery of Bernie Mae Parker contrary to N.J.S.A. 2C:15-1 (count four), first degree robbery of John Mills contrary to N.J.S.A. 2C:15-1 (count five), and second degree aggravated assault of Mills contrary to N.J.S.A. 2C:12-1b(1) (count six).  Petitioner was acquitted of possession of a controlled dangerous substance (cocaine) contrary to N.J.S.A. 2C:35-10a(1) (count seven).

The trial court granted the government's application for sentencing to an extended term, N.J.S.A. 2C:43-7.1, and on August 2, 1999, in accordance with the No Early Release Act, N.J.S.A. 2C:43-7.2, it sentenced Petitioner to an aggregate term of eighty years imprisonment with a sixty-four and one-half year parole disqualifier.

On September 23, 2002, the Superior Court of New Jersey, Appellate Division, affirmed the convictions, but vacated the NERA term on count two and remanded for entry of an amended judgment.[2]  On January 10, 2003, the trial court entered an amended judgment sentencing Petitioner to an aggregate term of eighty years imprisonment, with a parole ineligibility term of forty-seven and one-half years.  On March 25, 2003, the Supreme Court of New Jersey denied certification.  See State v. Jenkins, 176 N.J. 74 (2003).

Petitioner filed his state petition for post-conviction relief on July 8, 2003.[3]  On April 12, 2007, the trial court denied relief.  On February 10, 2009, the Appellate Division affirmed the denial of relief.  See State v. Jenkins, 2009 WL 303091 (N.J.Super. App.Div. Feb. 10, 2009).[4]  On April 23, 2009,

_____

[2] On appeal, Petitioner raised three issues: the properiety of the denial of the motion for acquittal, the propriety of the carjacking jury instructions, and whether the sentence was excessive.

[3] In his PCR petition, Petitioner asserted that trial counsel was ineffective because of his failure to investigate an alibi witness, failure to request a Wade hearing with respect to the identification by Mr. Henry, failure to cross-examine witness Howard Henry, comments during summation, and various other omissions.  At oral argument, Petitioner's PCR counsel abandoned the claim regarding the alibi witness.  (Tr. of PCR Hearing at 3-4 (March 23, 2007).)

[4] On appeal of the denial of PCR relief, Petitioner raised, for the first time, the claim that counsel should have moved to sever trial of the various charges.  Although the Appellate Division noted that the claim had not been raised below, it addressed and rejected the claim on the merits.  Petitioner also

the Supreme Court of New Jersey denied certification.  See State v. Jenkins, 199 N.J. 133 (Apr. 23, 2009).  This Petition timely followed.

Here, Petitioner asserts the following grounds for relief: ineffective assistance of trial counsel, (a) for failure to adequately investigate Petitioner's alibi, specifically including failure to use alibi witness Janice Davis, who allegedly would have placed Petitioner elsewhere at the time of arrest, (b) for failure to request a Wade[5] hearing to challenge the identification by the state's witness Howard Henry, (c) for failing to seek to sever the charges for trial, and (d) for "cumulative errors," including failure to cross-examine Howard Henry and the allegedly unnecessarily prejudicial comment by trial counsel during summation.

Respondents have answered, asserting that the Petition is a "mixed" petition, containing the unexhausted claim that trial counsel was ineffective for failing to investigate an alibi, as

---

raised on appeal of the PCR denial, for the first time, the claim that counsel should have requested jury instructions on receiving stolen property and evidence of "other crimes."  Petitioner argued that the failure to request such instructions meant that he was convicted of the crimes against Howard Henry based upon evidence obtained in connection with the crime against Mr. Mills, specifically, the fact that Petitioner was found in possession of Mr. Henry's automobile at the time of the assault on Mr. Mills permitted the jury to infer that Petitioner had robbed Mr. Henry. The Appellate Division refused to consider this claim, raised for the first time on appeal of the denial of PCR relief.

[5] United States v. Wade, 388 U.S. 218 (1967).

well as exhausted, but meritless, claims.  Respondents urge this Court to dismiss this "mixed" petition.  Petitioner has not filed any reply responding to this argument or otherwise in support of the Petition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

7

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims

8

presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   The Exhaustion Requirement

Respondents urge this Court to dismiss this Petition as a "mixed" petition, containing both exhausted and unexhausted claims.  Specifically, Respondents assert that Petitioner has failed to exhaust his claim his trial counsel rendered ineffective assistance because he failed to investigate a potential alibi.  The transcript of the state PCR hearing reflects that counsel abandoned that argument, after consultation with his client.[6]

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is

---

[6] Although Petitioner asserted ineffective assistance of PCR counsel in his appeal of the denial of PCR relief, he did not assert abandonment of this claim as one of the alleged grounds of ineffective assistance of PCR counsel.

required to present [his or her] unexhausted claims to the [state's] courts").

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts

11

must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  <u>Picard</u>, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  <u>Id.</u> at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims."  <u>Toulson</u>, 987 F.2d at 987.[7]  In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused."  <u>Mayberry v. Petsock</u>, 821 F.2d 179, 184 (3d Cir.), <u>cert. denied</u>, 484 U.S. 946 (1987).  However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the

---

[7] New Jersey Court Rule 3:22-4 bars a petitioner from raising a ground for relief in a post-conviction proceeding if it could have been raised in a prior proceeding, although the rule contains a mechanism for excusing this bar.  Rule 3:22-4 states that a petitioner will not be barred from asserting the new ground for relief if:

the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

N.J. Ct. R. 3:22-4.

petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." <u>Id.</u> at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." <u>Id.</u> at 187. Here, Petitioner has alleged no facts suggesting this his failure to exhaust the "alibi" claim is excusable.

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. <u>Rose v. Lundy</u>, 455 U.S. at 522; <u>Banks v. Horn</u>, 126 F.3d 206, 212-14 (3d Cir. 1997); <u>see also</u> <u>Toulson</u>, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies"). <u>But see</u> <u>Christy v. Horn</u>, 115 F.3d 201, 206-07 (3d Cir. 1997) ("in rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim").

13

More recently, because the one-year statute of limitations enacted by AEDPA in 1996 is not statutorily tolled by the premature filing of a federal habeas petition, see Duncan v. Walker, 533 U.S. 167 (2001), federal courts sometimes may stay § 2254 habeas proceedings to permit prisoners to exhaust state claims.  Petitioner has not requested such a stay.

The exhaustion requirement is a "total exhaustion" rule; that is, all claims presented in the federal habeas petition must have been exhausted in state court.  Rose v. Lundy, 455 U.S. 509 (1982).  At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[8] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'"  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court.  "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition."  Crews, 360 F.3d at 151.  Indeed, the Court of Appeals for the Third Circuit has

_____

[8] See 28 U.S.C. § 2244(d).

held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." <u>Crews</u>, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in <u>Crews</u>.

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
>     On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. ... For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

<u>Rhines v. Weber</u>, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of

limitations.  "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back."  <u>Id.</u> at 278.  <u>See also</u> <u>Crews</u>, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court.  If a petitioner fails to meet either time-limit, the stay should be vacated <u>nunc</u> <u>pro</u> <u>tunc</u>.") (citations omitted).

Here, Petitioner has presented a "mixed" petition, but has not requested a stay.  Nor has he asserted any facts suggesting that there is good cause for his failure to exhaust or that the "alibi" claim is meritorious, as is discussed more fully, below.  Accordingly, there is no reason to stay this matter to permit Petitioner to exhaust his unexhausted claim.  Thus, there is no reason to ask Petitioner if he would like to withdraw his unexhausted claim and proceed only with his exhausted claims.  The Petition is dismissible as a "mixed" petition.

In the alternative, Respondents argue that Petitioner's claims are meritless and should be denied.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d

Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).
For the reasons discussed below, it is apparent that the Petition
is meritless, and, to resolve this aged matter, this Court will
exercise its discretion to deny the Petition on the merits.

B.    <u>The Claim of Ineffective Assistance of Trial Counsel</u>

Petitioner asserts that his trial counsel provided
constitutionally deficient representation in four respects:
(a) for failure to adequately investigate Petitioner's alibi,
specifically including failure to use alibi witness Janice Davis,
who allegedly would have placed Petitioner elsewhere at the time
of arrest, (b) for failure to request a <u>Wade</u>[9] hearing to
challenge the identification by the state's witness Howard Henry,
(c) for failing to seek to sever the charges for trial, and (d)
for "cumulative errors," including failure to cross-examine
Howard Henry, for failure to request certain jury instructions,
and for the allegedly unnecessarily prejudicial comments by trial
counsel during summation.

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence."   U.S. Const. amend. VI.
The right to counsel is "the right to <u>effective</u> assistance of
counsel."   <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

---

[9] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

17

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are

18

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

With the exception of the unexhausted "alibi" claim, the state courts rejected all of Petitioner's claims of ineffective assistance of trial counsel.

> A defendant must show that counsel's performance was deficient and that such performance prejudiced the defendant in order to prevail on a claim of ineffective assistance of counsel.  State v. Fritz, 205 N.J. 42 (1987) (adopting the Strickland v. Washington, 466 U.S. 668 (1984), standard for ineffective claims).  The deficient performance prong requires a petitioner to show that an attorney's performance failed to meet an objective standard of reasonableness when compared with the professional skills of other practitioners in the field.  Trial counsel's decisions are afforded deference and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 446 U.S. at 686; see also Fritz, 105 N.J. at 58; ... .  As for the prejudice prong, a defendant must show that there is a reasonable probability that but for the attorney's deficient performance the outcome at trial would have been different.  Fritz, 105 N.J. at 58.

> ...

> Petitioner's primary contention is that his trial counsel should have requested a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), to challenge the out of court identification made by Howard Henry.  Mr. Henry identified a photo of

defendant from an array shown to him by Det. Frank
Wilson of the Plainfield Police Department.  Of the six
photographs in the array, Mr. Henry believed that photo
number four and photo number six looked like the
perpetrator; he ultimately selected number four.  He
indicated both before and at trial that he was fifty-
five percent sure that number four was the photo of the
perpetrator.  During direct examination, Mr. Henry
indicated the person who approached him before he was
attacked "kind of looked like" the defendant in court,
but that he was not sure.  Petitioner also cites to his
trial counsel's reading of Mr. Henry's grand jury
testimony, where he indicated that he was told after he
selected photo number four that was the person "caught
in the car."  Petitioner argues the combination of Mr.
Henry's uncertainty about photo number four and the
confirmation of Mr. Henry's selection should have
prompted petitioner's trial counsel to request a Wade
hearing as to the out-of-court identification. [fn]

> [fn] Trial counsel did request a hearing as to Mr.
> Henry's in-court identification.  At that hearing,
> Mr. Henry indicated that he was not sure when
> asked if he saw the person who approached him on
> January 3, 1998.  He repeated that testimony in
> front of the jury.

Before a Wade hearing is ordered, Defendant must
proffer some evidence of impermissible suggestiveness.
Whether or not this threshold showing has been made is
left to the sound discretion of the trial judge under
the totality of the circumstances.

The suggestiveness prong is not the same as the
test to determine whether the identification procedure
resulted in a substantial likelihood of irreparable
misidentification.  The United States Supreme Court in
Neil v. Biggers, 409 U.S. 188 (1977) set forth the dual
prongs of the test.  The procedure calls for the court
to analyze whether there is sufficient indicium of
reliability only if the court first finds the procedure
to be impermissibly suggestive.  If there is no
evidence of suggestiveness proffered, a Wade hearing
need not even be conducted.

...

The circumstances cited by defendant go largely to the second prong, i.e., the reliability of the identification.  ...  Thus, the uncertainty expressed by Mr. Henry about photo number four does not establish suggestiveness in the identification provess.  In fact, the uncertainty militates against any suggestiveness in the out-of-court identification procedure.  Instead, the dubiousness of the identification impacts on the reliability prong.

...

No evidence has been presented that Mr. Henry's selection of photo number four was the product of any suggestiveness, either directly from law enforcement personnel or from the circumstances of the identification procedure.  Indeed, petitioner's trial counsel told the trial court that "there is no basis for me to believe that there was anything unduly suggestive in the showing of the photographic array." Defendant has yet to satisfy the second prong of the Strickland test by proferring any evidence of suggestiveness.

While the confirmation of Mr. Henry's selection was inadvisable, there is no evidence that he was told about photo number four until after he picked it.  That photo was not suggested to him.  The comment made to him did not influence his selection.

Mr. Henry's candor, both as to his level of certainty regarding his selection of the photograph and of his in-court identification, indicate that there was not an issue of suggestiveness that would lead a reasonably competent attorney to request a Wade hearing.  Petitioner's trial counsel knew that the issues relating to the reliability of the identification were for the jury to consider.  He said to the trial court, "I don't consider what Mr. Henry did an identification, but, again, that's something to argue to the jury."  He did so.

Counsel's failure to request a Wade hearing under the circumstances presented here was proper; he was not ineffective under either prong of the Strickland test.

...

21

As to the failure to cross-examine Mr. Henry, it should be noted that the State, presumably anticipating cross-examination, brought out on direct examination the weaknesses in Mr. Henry's identification.  He testified that the person who approached him before he was assaulted "kind of looked like [petitioner], but I'm not sure."  He recounted the description of the person which he had previously given to the police ... .  Mr. Henry also reviewed the photo array during direct examination ... .  ...

In summation, petitioner's counsel argued that Mr. Henry could not make a positive identification.  He focused the jury's attention on the fact that Mr. Henry selected both photos four and six.  He highlighted the fact that Mr. Henry was only fifty-five percent sure that the person in photo number four was the person who approached him.  He pointed out that Mr. Henry was unsure about his in-court identification even though petitioner was the only black male in the courtroom outside the jury box.

There was nothing else to cross-examine Mr. Henry about.  Petitioner contended, through counsel at the PCR hearing, that trial counsel should have highlighted these facts during cross-examination but there is no evidence that the jury would have been swayed by such "highlighting."  Any impact on the jury is purely speculative.  They may have been swayed toward the Defendant but they also may have been put off if they perceived that trial counsel was badgering the victim.  Cross-examination would also have given the Prosecutor the opportunity to attempt to rehabilitate her witness, pointing out the extent to which the physical description which Mr. Henry originally gave matched the petitioner's characteristics.  In any event , petitioner has failed to meet either the first or second prong of Strickland with this argument.  He has certainly not overcome the presumption that trial counsel's tact was sound trial strategy in light of the fact that every issue favorable to petitioner was elicited on direct examination.  Moreover, petitioner has failed to show that there is a reasonable probability that the outcome would have been different if Mr. Henry had been cross-examined.

Petitioner also falls short of meeting both prongs with regard to the comments of trial counsel during summation.  The specific comment complained of is:

I submit to you that with respect to the Henry incident, whether the charge is robbery, carjacking, assault, that the State has failed to meet its burden of proving Mr. Jenkins was involved in that incident beyond a reasonable doubt.

You may think he did it.  You may think he probably did it.  You may think the chances are awfully good he did it.

I submit to you[,] you cannot find [beyond a] reasonable doubt that Clifford Jenkins was involved in Henry incident at 1:30 in the morning by the states own proof.

Counsel did nothing more here than to anticipate what some jurors might think after they heard the overwhelming evidence presented by the State with regard to three separate victims and to point out that the State's burden of proof - beyond a reasonable doubt - was higher than what the jurors thought petitioner may have done or what they think he probably did or what "the chances [were] awfully good that he did."

The evidence presented against petitioner was summarized, in part, by the Appellate Division in its decision of September 23, 2002:  ... .

The State also introduced a portion of a statement taken from petitioner on January 3, 1998.  In the statement, Petitioner admitted punching a man in the face because the victim gave him "a smart ass answer" to a question petitioner posed.  He also admitted he walked back to a black Pontiac which would not start and, after seeing an approaching police officer, ran from the car into a field and hid behind a house until caught.  He described the clothing he wore during the assault:  "hockey shirt, orange, black and white in color and brown pants and brown boots."

Faced with this evidence, it was certainly not error to address what trial counsel anticipated to be in the jurors' minds, i.e., that petitioner was

23

involved in these three incidents.  This was an identification case.  The defense presented was that petitioner did not commit these crimes.  The alibi presented by petitioner's mother confirms that tact. Pointing out that the evidence presented by the State, in light of the alibi defense, did not establish the elements of the offense, including that it was petitioner who committed each crime, was not error. ...

Trial counsel did all that he could considering the case presented against petitioner.  He was not ineffective.  He did not commit error with his comments.

Nor did trial counsel's concession that both male victims suffered fractured jaw amount to ineffective assistance of counsel.  ...

Trial counsel recognized that there was such evidence with regard to the victims' injuries; he told the jury so.  To deny the serious bodily injuries would have been ludicrous in light of the evidence presented.

Again, petitioner's defense was that he did not commit the offenses.  The victims' injuries were of little consequence if petitioner did not cause them. ...

The foregoing actions by counsel do not constitute even incidental legal errors which our Supreme Court has held may not upset an otherwise valid conviction. Indeed, they were not errors at all, much less ones of such magnitude that they rendered the trial unfair. ...

Despite the thoughtful arguments presented on behalf of petitioner, petitioner has not even come close to proving that his trial counsel's performance was deficient, especially in light of the plethora of evidence presented against him.  This court can discern no error in counsel's performance.  Counsel's trial strategy is evident from his summation.  Defendant has produced no evidence or argument that would overcome the presumption that counsel's strategy was sound considering the proofs confronting petitioner.  See Strickland, 446 U.S. at 686.  ...

24

(Superior Court of New Jersey, PCR Letter Opinion (April 10, 2007) (caselaw and record citations omitted) (footnotes omitted).)

　　With respect to the claims previously raised before the PCR court, the Appellate Division affirmed for the reasons stated in the PCR opinion.  See State v. Jenkins, 2009 WL 303091 (N.J.Super. App.Div. Feb. 10, 2009).  After identifying the applicable Strickland standard, the Appellate Division rejected the newly-raised claim that trial counsel was ineffective for failing to obtain a severance of the charges.

> 　　Charges may be joined when the charges are the same or of similar character or when two or more acts are connected or are part of a common plan or scheme. R. 3:7-6.  When the charges arise from a series of charges closely connected by time and place and evidence of the other offenses may be admitted in separate trials, joinder of the charges is permissible. State v. Pierro, 355 N.J.Super. 109, 117, 809 A.2d 804 (App.Div. 2002), certif. denied, 175 N.J. 434, 815 A.2d 479 (2003).
>
> 　　Here, as related in our opinion on direct appeal, the three incidents that were the subject of a single indictment and a single trial arose over a period of eight hours.  Defendant assaulted Howard Henry and took his car.  Less than seven hours later, defendant took Bernie Mae Parker's pocketbook by force and fled from the scene in the car he had taken from Henry.  An hour later, defendant assaulted John Mills and took the keys to his car.  A passing police officer observed defendant enter the car he stole from Henry.  When the police officer approached, defendant fled.  Following a chase and defendant's apprehension, the officer returned to the first victim's car and found Parker's pocketbook and Mills's keys.  The offenses involving the three victims were inextricably linked.  It is highly unlikely any motion to sever would have been successful.

State v. Jenkins, 2009 WL 303091 at *3.

With respect to the newly-raised claim that counsel had failed to request certain jury instructions regarding the commission of "other crimes" and the receipt of stolen property, the Appellate Division declined to review these issues raised for the first time on appeal, citing Nieder v. Royal Imden. Ins. Co., 62 N.J. 229 (1973), where the Supreme Court of New Jersey held that, "It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder, 62 N.J. at 234 (citing Reynolds Offset Co., Inc. v. Summer, 58 N.J.Super. 542, 548 (N.J.Super. App.Div. 1959), certif. den., 31 N.J. 554 (1960)).  Thus, the Appellate Division found the jury-instruction claim procedurally barred, and this Court is also barred from considering the claim.

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)].  Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  Coleman v.

>    *Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
>    L.Ed.2d 640 (1991).

*Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (emphasis added).

Here, Petitioner has not alleged any facts suggesting "cause" to excuse his procedural default nor actual "prejudice" resulting from the alleged failure to request the jury instructions. Nor has he demonstrated that failure to consider the claim will result in a fundamental "miscarriage of justice." To the contrary, as noted by the state courts, the evidence against Petitioner was substantial. Thus, Petitioner is not entitled to pursue this claim in federal court.

Finally, with respect to the previously abandoned claim that Petitioner's counsel failed to investigate an alibi witness, Petitioner has failed to provide any evidence to this Court that would substantiate his claim that he had an alibi witness with respect to the 1:30 a.m. crime against Howard Henry. In light of the fact that Petitioner was found in possession of Mr. Henry's car just a few hours later, after similar crimes were committed against two other individuals, any such alibi witness would not be likely to alter the result of the trial. Petitioner has failed, at the least, to satisfy the "prejudice" prong of the *Strickland* standard.

For all the foregoing reasons, the Petition is denied.

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find debatable this Court's conclusions that the Petition is dismissible as a "mixed" petition or that the claims are substantively meritless.  No certificate of appealability shall issue.

28

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

<u>S/Faith S. Hochberg</u>
Faith S. Hochberg
United States District Judge

Dated: September 13, 2010

29